IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 94-11030

---

ARTHUR H. WILLIAMS,

Plaintiff-Appellee,

versus

CIGNA FINANCIAL ADVISORS, INC.,
ET AL.,

Defendants-Appellants.

---

Appeal from the United States District Court
for the Northern District of Texas

---

(June 19, 1995)

Before HIGGINBOTHAM and PARKER, Circuit Judges, and McBRYDE,
District Judge.[*]

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Arthur H. Williams filed suit against the defendants,
collectively referred to as Cigna, alleging age discrimination.
Cigna moved for a stay pending arbitration pursuant to Williams'
registration agreement with the National Association of Securities
Dealers.  The district court denied Cigna's motion.  We find that
Williams' dispute is subject to arbitration and remand for entry of
an    order    staying    proceedings    pending    arbitration.

---

[*]    District Judge of the Northern District of Texas, sitting
by designation.

In 1987, Williams began working at Cigna, which is a member firm of the National Association of Securities Dealers. On July 15, 1987, Williams signed a Registered Representative Agreement with Cigna, which provided that he maintain a current NASD registration and adhere to NASD rules. On July 17, 1987, Williams registered with NASD by signing a Uniform Application For Securities Industry Registration Or Transfer, also known as a U-4 Registration. The U-4 Registration contract between Williams and NASD provided that Williams would "abide by, comply with, and adhere to all the provisions, conditions and covenants of the . . . by-laws and rules and regulations of [NASD] <u>as they are and may be adopted, changed or amended from time to time</u>." The U-4 Registration also provided for mandatory arbitration of "any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register." In 1987, the NASD Code of Arbitration Procedure provided

> for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of [NASD], with the exception of disputes involving the insurance business of any member which is also an insurance company:
>
> (1) between or among members;
> (2) between or among members and public customers, or others.

On October 1, 1993, the Securities and Exchange Commission amended its NASD rules to provide "for the arbitration of any

dispute, claim or controversy arising out of or in connection with the business of any member of [NASD] or <u>arising out of the employment or termination of employment of associated person(s) with any member</u>." While this regulation was not in effect when Williams signed his first U-4 Registration, it was in effect on October 20, 1993 when Williams executed a second U-4 Registration to sell securities in Colorado.

On December 15, 1993, Cigna terminated Williams. On January 5, 1994, Williams filed an age discrimination claim against Cigna with the Equal Employment Opportunity Commission. On April 13, 1994, after receiving a Notice of Right to Sue from the EEOC, Williams filed suit in state court, claiming recovery under the Age Discrimination in Employment Act. Cigna removed the action to federal court and filed a motion to dismiss, which the district court denied on August 29, 1994. On or about September 16, 1994, Cigna discovered that Williams had signed a written agreement requiring arbitration of his claim and moved for a stay of proceedings pending arbitration. The court denied Cigna's motion, finding it "completely lacking in legal merit." Cigna filed this interlocutory appeal pursuant to 9 U.S.C. § 16(a)(1)(A).

## II.

The first step in our analysis is to determine whether the arbitration clause encompasses employment disputes. Plainly, it does. In 1987, Williams agreed to adhere to NASD rules "as they are and may be adopted, changed or amended from time to time." By

4

October 1993, when Williams signed a second U-4 Registration, the NASD rules concerning arbitration explicitly mandated that employment disputes be arbitrated.

A similar situation was presented in <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 111 S. Ct. 1647 (1991). Gilmer worked for Interstate as its Manager of Financial Services. As a condition of his employment, he was required to register as a securities representative with the New York Stock Exchange. The U-4 Registration that Gilmer signed mandated arbitration as required by NYSE rules. NYSE rules provided "for arbitration of '[a]ny controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative.'" <u>Id.</u> at 1651. When Interstate terminated Gilmer, Gilmer filed an age discrimination complaint. Interstate filed a motion to stay the proceeding pending arbitration, which the district court denied. The Fourth Circuit reversed, and the Supreme Court affirmed. The Court held that nothing within the strictures of ADEA or its legislative history "evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." <u>Id.</u> at 1652 (citation and internal quotation marks omitted).

Williams attempts to distinguish <u>Gilmer</u> on the grounds that when Gilmer signed his U-4 Registration, NYSE rules explicitly provided for arbitration of employment disputes. By contrast, Williams notes that when he signed his first U-4 Registration, NASD rules did not explicitly provide for arbitration of employment

5

disputes. Even if it were true that the 1987 NASD arbitration rules did not encompass employment disputes, an issue we do not today decide,[2] Williams' argument would still be without merit. Cigna terminated Williams <u>after</u> the NASD rules were amended to provide for arbitration of employment disputes and <u>after</u> Williams executed a second U-4 Registration. Therefore, Williams' agreement with NASD encompasses arbitration of his employment dispute.

## III.

Since Williams agreed to arbitrate his employment claims, we next must address the applicability of the Federal Arbitration Act to that agreement. The FAA provides that a written agreement to arbitrate a dispute arising out of that agreement is enforceable so long as the agreement is one "evidencing a transaction involving commerce." 9 U.S.C. § 2. Williams' U-4 Registration is a contract involving the sale of securities and thus involves commerce. <u>See Gilmer</u>, 111 S. Ct. at 1650-51 (implicitly holding FAA applicable to U-4 Registration); <u>see also</u> <u>Allied-Bruce Terminix Cos., Inc. v. Dobson</u>, 115 S. Ct. 834, 841 (1995) (Congress exercised its "commerce power to the full" in enacting § 2 of the FAA). Section 3 of the FAA mandates that when an issue is referable to

---

[2] The circuits are split on whether NASD's pre-amendment arbitration rules encompassed employment disputes. <u>Compare</u> <u>Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 39 F.3d 1482 (10th Cir. 1994); <u>Kidd v. Equitable Life Assurance Soc'y of the United States</u>, 32 F.3d 516, 519 (11th Cir. 1994) and <u>Association of Inv. Brokers v. SEC</u>, 676 F.2d 857, 861 (D.C. Cir. 1982) <u>with</u> <u>Kresock v. Bankers Trust Co.</u>, 21 F.3d 176, 178 (7th Cir. 1994) and <u>Farrand v. Lutheran Bhd.</u>, 993 F.2d 1253, 1254-55 (7th Cir. 1993) (Easterbrook, J.).

arbitration pursuant to a written agreement, the district court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

Section 1 of the FAA exempts from its operation "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Williams argues that his dispute is exempt under § 1 because the arbitration clause is contained in a contract for employment and he was a worker engaged in interstate commerce. This argument is without merit, because the agreement to arbitrate is not contained in a contract for employment but in Williams' U-4 Registration. Williams counters that even though his agreement to arbitrate is contained in the U-4 Registration, it was also incorporated by reference into his employment agreement with Cigna. However, it is the U-4 Registration that is the source of the arbitration agreement, not Williams' contract with Cigna. Stated another way, if we were to hold that Williams' Registered Representative Agreement incorporated by reference the U-4 Registration arbitration clause, § 1 would still exempt only the contract of employment. The U-4 Registration is a separate contract, and its arbitration clause is enforceable under the FAA. See Gilmer, 111 S. Ct. at 1651-52 n.2.

7

This narrow interpretation of § 1 is in line with other courts that have considered the issue. For instance, the Supreme Court in Gilmer noted:

> [I]t would be inappropriate to address the scope of the § 1 exclusion because the arbitration clause being enforced here is not contained in a contract of employment. . . . The record before us does not show, and the parties do not contend, that Gilmer's employment agreement with Interstate contained a written arbitration clause. Rather, the arbitration clause at issue is in Gilmer's securities registration application, which is a contract with the securities exchanges, not with Interstate. The lower courts addressing the issue uniformly have concluded that the exclusionary clause in § 1 of the FAA is inapplicable to arbitration clauses contained in such registration applications.

Id.; accord Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229, 230 n.* (5th Cir. 1991).


IV.

Williams also argues that his agreement to arbitrate is not enforceable because he did not knowingly and voluntarily waive his right to a judicial forum as required by the Older Workers Benefit Protection Act. Pub. L. No. 101-433, 104 Stat. 978 (1990) (amending ADEA at 29 U.S.C. §§ 621, 623, 626, 630). Specifically, Williams argues that ADEA gives him a right to a jury trial that may not be waived absent compliance with the procedures set forth in the OWBPA. 29 U.S.C. § 626(c)(2). The OWBPA requires, among other things, that a waiver of a right or claim be in writing, that it be between the individual and the employer, and that it specifically refer to rights or claims arising under ADEA. Id. § 626(f)(1).

8

Williams' argument is without merit.  In enacting the OWBPA, Congress' primary concern was with releases and voluntary separation agreements in which employees were forced to waive their rights.  S. Rep. No. 263, 101st Cong., 2d Sess. 31-35 (1990), reprinted in 1990 U.S.C.A.A.N. 1509, 1537-41.  There is no indication that Congress intended the OWBPA to affect agreements to arbitrate employment disputes.  See Douglas E. Abrams, Arbitrability in Recent Federal Civil Rights Legislation:  The Need for Amendment, 26 Conn. L. Rev. 521, 555 n.187 (1994).  Moreover, the OWBPA protects against the waiver of a right or claim, not against the waiver of a judicial forum.  Cf. Saari v. Smith Barney, Harris Upham & Co., Inc., 968 F.2d 877, 881-82 (9th Cir.), cert. denied, 113 S. Ct. 494 (1992) (holding that provision in Employee Polygraph Protection Act precluding waiver of the "rights and procedures" provided under the Act did not make an agreement to arbitrate unenforceable); see also Abrams, supra, 26 Conn. L. Rev. at 555 n.187.  The Supreme Court recognized this distinction in Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985), in which it held that

> [b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. . . . We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history.

We recognize that Congress, through the OWBPA, has protected terminated employees who waive their substantive rights under ADEA in exchange for a more favorable severance package; however, we

9

find no clear indication that Congress was likewise concerned with protecting employees who agree to arbitrate claims that may arise during the course of their employment.

There is yet another reason for holding the OWBPA inapplicable. Section 626(f)(1)(C) provides that to be considered knowing and voluntary, an employee cannot "waive rights or claims that may arise after the date the waiver is executed." If we were to hold that an arbitration clause in a U-4 Registration had to comply with the OWBPA's waiver provisions, we would in effect be holding that employers and employees could never enforce a pre-dispute agreement to arbitrate. We decline to remove from the province of arbitration all such pre-dispute agreements absent a clear indication that Congress intended such a result. See Gilmer, 111 S. Ct. at 1652 (burden is on party seeking to avoid arbitration to show that "Congress intended to preclude a waiver of a judicial forum for ADEA claims"); see also id. at 1653-54 ("Congress . . . did not explicitly preclude arbitration . . . even in its recent amendments [OWBPA] to the ADEA."); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."); David L. Shapiro, Continuity and Change in Statutory Interpretation, 67 N.Y.U. L. Rev. 921 (1992).

Williams also argues, for the first time on appeal, that apart from the OWBPA and as a general rule, his waiver of a judicial forum must be knowing and voluntary. See Prudential Ins. Co. of Am. v. Lai, 42 F.3d 1299, 1305 (9th Cir. 1994), petition for cert.

10

filed, 63 U.S.L.W. 3861 (U.S. May 22, 1995) (No. 94-1923).  In support of his claim that he did not knowingly waive his right to a judicial forum, Williams has included in his record excerpts an affidavit dated February 1, 1995.  This affidavit is not part of the record, and we will not consider a factual issue raised for the first time on appeal.  See Citizens Nat'l Bank v. Taylor (In re Goff), 812 F.2d 931, 933 (5th Cir. 1987); Leonard v. Dixie Well Serv. & Supply, Inc., 828 F.2d 291, 296 (5th Cir. 1987).

V.

Although the FAA makes contracts containing arbitration clauses enforceable, "the right to arbitration, like any other contract right, can be waived."  Miller Brewing Co. v. Fort Worth Distrib. Co., Inc., 781 F.2d 494, 497 (5th Cir. 1986) (citation and internal quotation marks omitted).  However, "[w]aiver of arbitration is not a favored finding, and there is a presumption against it."  Id. at 496.  Williams argues that Cigna waived its right to seek arbitration because it "substantially invoke[d] the judicial process to the detriment or prejudice of the other party." Id. at 497.  In Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1159 (5th Cir. 1986), the court found that a waiver had occurred where Drexel "initiated extensive discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pre-trial deadlines," delayed seventeen months, and caused the other side to incur attorney's fees.  The

11

court found that these numerous actions were "[u]nlike a perfunctory motion to dismiss before answering." Id. at 1162.

Unlike Drexel, Cigna did not substantially invoke the judicial process and waive its right to arbitration. Cigna removed the action to federal court, filed a motion to dismiss, filed a motion to stay proceedings, answered Williams' complaint, asserted a counterclaim, and exchanged Rule 26 discovery. Cigna filed its motion for a stay pending arbitration as soon as it discovered that the dispute was subject to arbitration.[3] It answered Williams' complaint only after it filed its motion for stay pending arbitration and after Williams claimed that Cigna was in default for failing to answer. The answer included a counterclaim that was compulsory under Fed. R. Civ. P. 13(a). After Cigna filed its motion for stay pending arbitration, it also filed a motion to stay discovery pending the court's ruling on the arbitration motion. The court denied Cigna's motion to stay discovery and when Cigna sought letter agreements confirming that its response to Williams' discovery request would not constitute a waiver of its right to seek arbitration, Williams refused. In sum, Cigna did not "substantially invoke[] the judicial process" and waive its right to seek arbitration.

---

[3] Williams argues that since his contract with Cigna required that he register with NASD, Cigna should have known prior to removing the action that the dispute was arbitrable. However, Williams does not challenge Cigna's assertion that it filed its motion for a stay shortly after it actually discovered that the dispute was arbitrable.

VI.

For the foregoing reasons, we VACATE the district court's order denying a stay pending arbitration and REMAND the case for entry of a stay.