**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-60314
(Summary Calendar)

_____

HUNTINGTON BANK, INC.,
as Trustee of the Mariette G. Howell
Trust dated June 19, 1975

PLAINTIFF-APPELLANT,

VERSUS

MERRILL LYNCH, PIERCE, FENNER & SMITH;
ROBERT McGEHEE; DOTSON & McGEHEE, a partnership;
and DOTSON/McGEHEE/SMITH, a partnership.,

DEFENDANTS-
APPELLEES.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
3:94-CV-44

January 15, 1996

Before JONES,  JOLLY,  and STEWART, Circuit Judges.

PER CURIAM:[*]

Huntington Bank's motion for arbitration was denied by the District Court upon its finding that Huntington's actions in pursuing litigation against Merrill Lynch constituted a waiver of its contractual right to arbitrate. Huntington appealed and we affirm.

---

[*]  Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

1

FACTUAL AND PROCEDURAL BACKGROUND

This case is one of a series of cases alleging mismanagement of a trust. Mariette G. Howell, who lived in Ohio, set up a trust to benefit her son and his heirs after her death, and named her brothers Frank and Stewart Gilchrist as trustees. A major asset of her estate was her stock in the family business, Gilchrist Timber Company, located in Oregon. After her death in 1986, Frank and Stewart felt that it would be in the interest of the company to buy out Mariette's trust's interest, because otherwise Gilchrist Timber would lose its subchapter S standing. In an earlier suit, Huntington Bank alleged that Frank and Stewart cheated their sister's estate out of approximately $18,000,000 by only paying the estate $2,000,000 for her substantial interest. That suit was eventually settled.

As trustees, Frank and Stewart invested Mariette's $2,000,000 with Merrill Lynch, and started actively trading those accounts in the fall of 1987. Stewart, an attorney in Mississippi, set up the accounts with Merrill Lynch's Mississippi office. Frank, in Oregon, rubber-stamped those transactions when necessary. In this connected case, Huntington Bank claims that Mariette's trust lost $940,000 of that $2,000,000 value due to Stewart's following Merrill Lynch's bad advice and churning of the trust accounts, when a prudent investment strategy was called for by the trust itself.

Counsel for Huntington Bank became concerned about Merrill Lynch's actions while sorting through roughly 2,700 documents received in the spring of 1993 pursuant to a *subpoena duces tecum* served on Merrill Lynch in the earlier case against Frank and Stewart. Included in those documents were the original account applications setting forth Merrill Lynch's standard arbitration clause as part of the trading contract. On June 17, 1993, Jerome LaBarre, an attorney experienced in securities litigation and counsel for Huntington Bank, sent a letter to Merrill Lynch's attorney. In this letter, he demonstrated that probably he was aware of the existence of the arbitration clause by pointing out that some of the Huntington claims were getting close to the 6-year time bar set forth in the NASD arbitration rules. Nevertheless, Huntington claims that as of that time, it was not aware of whether an arbitration agreement between the Trust and Defendant Merrill Lynch existed. In the same letter,

2

LaBarre asked for and obtained from Merrill Lynch an agreement to toll any applicable statutes of limitations for six months -- i.e. until Nov., 1993.

Then, in September of 1993, LaBarre wrote counsel for Merrill Lynch requesting copies of the brokerage agreements and inquiring as to whether those agreements contained arbitration clauses. Approximately one week later, counsel for Merrill Lynch replied to this letter by producing copies of the arbitration agreements. Additionally, counsel for Merrill Lynch informed Huntington that they were considering the requested extension of the tolling agreements. The arbitration agreements provided that all disputes between the parties concerning the brokerage agreements would be arbitrated in conformity with the rules promulgated by either the National Association of Securities Dealers ("NASD") or the New York Stock Exchange ('NYSE").

On November 12, 1993, Huntington filed suit against Defendants in an Oregon state court, alleging that Defendants had engaged in investment practices inconsistent with the aims of the trust and that, as a result of these practices, the Trust suffered substantial losses. The Complaint asserted claims for relief based upon violations of Oregon securities laws, breach of fiduciary duty, common law fraud, negligent misrepresentation and negligence. Three days later, LaBarre wrote to Merrill Lynch's counsel explaining that, in view of the fact that the defendant had refused to extend the tolling agreement, Huntington had filed suit in order to avoid any limitations problems. Counsel for Huntington asserted that it was still deciding whether the arbitration agreements entered into by the Gilchrists as former trustees were binding upon Huntington as the present trustee. In view of this asserted uncertainty, Huntington requested that Defendants agree to an order directing the case to arbitration before the American Arbitration Association. The letter also invited Defendants to enter into settlement negotiations. The letter further stated that Huntington would wait to engage in discovery until it received Merrill Lynch's responses to these matters.

Instead of replying to Huntington's November 15th letter, on December 15, 1993, Merrill Lynch removed the case to federal court on the basis of diversity. Shortly thereafter, Merrill Lynch filed additional motions challenging both personal jurisdiction of the Oregon courts and requesting

3

a change of venue to Mississippi. Pursuant to the joint agreement of the parties, United States District Judge Helen Frye (Oregon) entered an order providing that Huntington would be entitled to conduct discovery on these issues before responding to the two motions. Judge Frye's order provided that Huntington would be entitled to depose five Merrill Lynch employees in its Jackson, Mississippi office, and it also directed Merrill Lynch to produce various documents. The order provided that the scope of this discovery would not be limited to matters raised in the two motions, but would also encompass the merits of the case.

On or near the date that Defendants filed their two motions, they also filed their first answer. In this answer, Merrill Lynch asserted, as an affirmative defense, that the matters in the suit were subject to arbitration agreements. Subsequently, Defendants filed an amended complaint in which they deleted this particular affirmative defense. Huntington contends that this amendment in the complaint by Defendants bolstered its uncertainty as to whether the arbitration agreements were binding. Huntington further contends that this uncertainty was not laid to rest until after the five depositions were taken and each of the deponents conceded the validity of the arbitration agreements.

On April 1, 1994, after the discovery provided for by Judge Frye's order had been completed, LaBarre wrote counsel for Defendants and requested that the case be referred to arbitration. On April 7, 1994, Merrill Lynch responded to this request by asserting that Huntington had waived its right to arbitrate the dispute. On April 15, 1994, Huntington filed its Motion for an Order Referring Matter to Arbitration and Staying Proceedings Pending Arbitration in the district court. On April 25, 1994, Defendants filed their formal opposition to this motion.

Then, on July 26, 1994, pursuant to 28 U.S.C. §1404, Judge Frye entered her order transferring the case to Mississippi. Judge Frye's ruling stated that in view of this transfer, the other pending motions, including the first arbitration motion, were moot. Huntington appealed this ruling to the Ninth Circuit, asserting that Judge Frye's order had not dealt with the arbitration issue. In its response to that appeal, Merrill Lynch conceded that valid arbitration agreements in fact existed and that the district judge's ruling had not dealt with this issue. The Ninth Circuit unilaterally stayed

4

appeal proceedings pending a decision by the Mississippi District Court on Huntington's right to have the merits of its arbitration motion heard.

Upon transfer to the Southern District of Mississippi, Huntington filed its second arbitration motion. Merrill Lynch again opposed the motion, contending that Huntington, by filing suit instead of going directly to arbitration, by waiting a substantial period between the initial filing of the suit in Oregon, and by substantially participating in the court-sanctioned discovery process to the detriment of Merrill Lynch, waived its right to arbitrate. Huntington requests that we reverse the judgment of the district court.

## DISCUSSION

This court has jurisdiction pursuant to 9 U.S.C. §16 (Supp. 1995) because it is an appeal from an order refusing a stay of action pending arbitration. The district court ruled that Huntington, by positively invoking court procedures, waived its right to arbitrate its claims. "The question of what constitutes a waiver of the right of arbitration depends on the facts of each case," therefore we review the factual foundation underlying the question of waiver according to the clearly erroneous standard. *Walker v. J.C. Bradford & Co.*, 938 F.2d 575 (5th Cir. 1991)(citation omitted). However, we review the finding of waiver *de novo. Id.*

The right to arbitration, like any other contractual right, can be waived. *Miller Brewing Co. v. Fort Worth Distributing Co.*, 781 F.2d 494, 497 (5th Cir. 1987). Thus, waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party. However, waiver of arbitration is not a favored finding, and there is a presumption against it. *Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995)(citing Miller, 781 F.2d at 496). In *Cigna*, this court found no waiver where a party filed its motion for a stay pending arbitration as soon as it discovered that the dispute was subject to arbitration, even though it did not acquire this knowledge until after it had removed the action to federal court, filed a motion to dismiss, filed a motion to stay proceedings, filed an answer, asserted a counter claim, and exchanged Rule 26 discovery. *Cigna*, 56 F.3d at 661.

The facts of this case are contrary to those of *Cigna*. Huntington was aware of the possible existence of an arbitration right as early as May, 1993, and took steps to preserve that right. Nevertheless, it chose to handle its dispute by filing a lawsuit instead of initiating the arbitration process. It then chose to oppose the motions filed against it by Merrill Lynch rather than immediately seeking a court order referring its dispute to arbitration. It conducted five depositions in Jackson, Mississippi, and the scope of this discovery was not limited merely to the issues of jurisdiction and venue.

Moreover, Merrill Lynch has been prejudiced by the litigation. In *Miller*, a litigation-related expenditure of $85,000 by the defendant was a relevant and persuasive consideration in the court's finding that the defendant had been significantly prejudiced by the plaintiff's failure to invoke arbitration at an early stage in the dispute. *Miller*, 781 F.2d at 498. In the case at bar, the district court found that defendants have incurred at least this much in legal expenses. Furthermore, the district court found that Huntington has had the benefit of discovery mechanisms which would not have been available to it in arbitration proceedings.

Huntington puts forth several arguments in support of a finding of non-waiver. As summarized in the trial court's opinion, these arguments essentially amount to a single proposition: by initiating suit in the face of its uncertainty as to the validity and scope of its right to arbitration, it was attempting to clarify, expand and preserve its right to arbitrate. In other words, Huntington is trying to say that its motives for not immediately demanding arbitration should be considered in determining whether or not it waived its right to arbitrate. Citing *Walker v. J.C. Bradford & Co.*, 938 F.2d 575 (5th Cir. 1991), the district court found that such arguments based on subjective motivation are irrelevant.

While a party's subjective motivation for requesting arbitration may be irrelevant in considering whether he has waived his right to that arbitration, that does not mean that this court has rejected any consideration of a party's motivations for *failing* to request arbitration at the earliest possible time. There may be substantial reasons why a party is unable to request arbitration early on,

6

as demonstrated in *Cigna*, 56 F.3d at 656 where the defendant failed to request arbitration because he was unaware that he had that right.

In *Walker*, this court held that, although a request for arbitration might only be for the purpose of delaying a court proceeding, "the issue is evaluated objectively, independent of motivation." *Walker*, 938 F.2d at 578. While we hesitate to find that a party has waived its contractual right to arbitration, "parties who use federal courts to advance their causes and then seek to finish their suits in the alternate fora" are not kindly looked upon by this Court. *Id.*

This is the case with Huntington. The district court clearly found that Huntington was at least on constructive notice as to the existence of the arbitration agreements. Moreover, because LaBarre had previously participated in an arbitration case pursuant to the same or substantially identical arbitration agreement at issue in this case and had even secured a tolling agreement from Merrill Lynch in anticipation of pursuing arbitration, his argument that he was uncertain as to the enforceability or existence of those agreements is unconvincing. Finally, even if the agreements themselves were not enforceable, LaBarre, as a practitioner sophisticated in this field, should have known that pursuant to both the NASD and NYSE rules, Huntington had a right to arbitrate irrespective of the validity of any written arbitration agreement. See. Sec. 12 of NASD Uniform Code of Arbitration and Rule 600 of NYSE Arbitration Rules.

Huntington argues that the reason it decided to file its claim rather than demand arbitration in the first place was because of Section 15 of the NASD Code which bars the arbitration of any dispute occurring more than six years from the occurrence or event giving rise to that dispute. Huntington was concerned as to the arbitrability of certain of its claims which were getting stale by the Fall of 1993, and felt that it could avoid that pitfall by following the provision of those same rules which exempted such claims from the six year bar when arbitration is ordered by a court. As pointed out by the trial court, these contentions are undermined by at least two considerations. First, had Huntington demanded arbitration in a timely fashion, these claims would have been protected by the tolling agreement which it had secured in June of 1993. Second, if Huntington's motivation in filing

7

suit was to obtain an order referring its dispute to arbitration, why did it not immediately do so, instead of waiting nearly six months after filing suit. Third, the majority, if not all, of Huntington's claims stemmed from trades occurring after the stock market crash of October 1987, thus they were still timely during the months from the original tolling agreement in June of 1993 through September of 1993 when Huntington was contemplating filing suit. There was no reason why Huntington could not have demanded arbitration in that period upon being assured that it had that right under NESD law, and its claims were still timely under those rules. Because of these unjustified delays in demanding arbitration, and because these delays were prejudicial and costly to defendant Merrill Lynch, the district court did not err in finding that Huntington waived its right to arbitrate. AFFIRMED.