William L. THIELE, Jr., Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, and Does 1 Through 100, Inclusive, Defendants.

No. 97CV1887–B (AJB).

United States District Court, S.D. California.

Jan. 21, 1999.

John S. Adler, Law Offices of John S. Adler, San Diego, CA, Richard Bryson, Law Offices of Richard Bryson, San Diego, CA, for plaintiff.

Terry E. Sanchez, Munger, Tolles & Olsen, LLP, Los Angeles, CA, for defendant.

**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION; (2) VACATING THIS COURT'S APRIL 8, 1998 AND DECEMBER 22, 1998 ORDERS; (3) ENTERING THIS ORDER NUNC PRO TUNC TO DECEMBER 22, 1998; AND (3) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY THE PROCEEDINGS**

BREWSTER, Senior District Judge.

On September 11, 1998, Plaintiff William L. Thiele ("THIELE") filed a Motion for Reconsideration of this Court's April 8, 1998 Order compelling arbitration of his claims. He argues that new case law requires the invalidation of his purported arbitration agreement and that a change in Defendant's policy, resulting from an Illinois lawsuit, also invalidates this agreement. Defendant Merrill Lynch ("ML") disagrees, characterizing Thiele's Motion to Reconsider as an attempt to reargue the Motion to Compel Arbitration.

## I. Background

Thiele worked as a financial consultant for ML from 1972 until 1996. At the start of his employment at ML, Thiele executed a New York Stock Exchange ("NYSE") Form Re–1 to register him as a securities representative with the NYSE. The Form Plaintiff signed contains a compulsory arbitration clause:

> I agree that any controversy between me and any member or member organization or affiliate or subsidiary thereof arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and rules then obtaining of the New York Stock Exchange.

Form RE–1 ¶ 31(j).

Moreover, during his employment at ML, on at least July 22, 1981, July 11, 1989, October 26, 1994, and July 25, 1995, Plaintiff executed a "Form U–,4" as required, to register himself in additional states. The Form U–4 applications contain compulsory arbitration clauses:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in Item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judg-

ment in any court of competent jurisdiction.

Form U–4, ¶ 5.

Defendant discharged Plaintiff on December 26, 1996. On October 21, 1997, Plaintiff filed a complaint with this Court alleging (1) age discrimination in violation of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and the California Fair Employment and Housing Act ("FEHA"), Cal. Gov.Code §§ 12900–12996 (Deering 1982); (2) termination in violation of public policy; (3) breach of implied employment contract; and (4) tortious interference with prospective advantage. On April 8, 1998, upon motion by Defendant, and pursuant to the contractual agreements between the Parties, this Court ordered the Parties to submit their claims to arbitration. Plaintiff now asks for reconsideration of that Order.

## II. Analysis

### A. Standard of Law

■ The Federal Rules of Civil Procedure provide this Court with the grounds to hear a motion for reconsideration of a previous order:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b). Reconsideration is appropriate "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J. Multnomah County, Or. v. ACandS, Inc.,* 5 F.3d 1255, 1262 (9th Cir.1993).

### B. Grounds for Reconsideration

Thiele argues that he is entitled to reconsideration of the Court's April 8, 1998 Order on two grounds: (1) there has been an intervening change in law; (2) there has been a change in NYSE and ML rules and policies. The Court declines to grant reconsideration on these grounds, but does grant reconsideration on other grounds.

Thiele argues that there was a change in law on May 8, 1998, when the Ninth Circuit decided *Duffield v. Robertson Stephens & Co.,* 144 F.3d 1182 (9th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 465, 142 L.Ed.2d 418 (1998), *cert denied,*—— U.S. ——, 119 S.Ct. 445, 142 L.Ed.2d 399 (1998). In *Duffield,* the court held that a compulsory arbitration clause in a Form U–4 was unenforceable in an employment discrimination case under Title VII of the Civil Rights Act of 1964 ("TITLE VII"), 42 U.S.C. §§ 2000e–2000e–17, and FEHA. *See Id.* The *Duffield* court mentioned the OWBPA amendments to the ADEA in a footnote:

> After the Supreme Court granted certiorari in *Gilmer [v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ],* Congress amended the ADEA to provide that all waivers of rights under the Act, apparently including the right to a jury trial, 29 U.S.C. § 626(c), must be "knowing and voluntary." ... A waiver is not considered knowing and voluntary if the individual waives "rights or claims that may arise after the date the waiver is executed."

*Id.* at 1190 n.5 (citations omitted). Although Thiele relies on this footnote in arguing that there has been an intervening change in law, the *Duffield* decision concerned Title VII claimants rather than

ADEA claimants. Therefore, this footnote is dicta and does not constitute a change in law regarding the ADEA. However, this Court may review its original Order for error or injustice even without a change in law.

This Court's April 8, 1998 Order was in error because it compelled arbitration and stayed these proceedings without scrutinizing the compulsory arbitration clause under the Older Workers' Benefit Protection Act ("OWBPA"), Pub.L. 101–433, 101 Stat. 978 (1990) (amending 29 U.S.C. §§ 621, 623, 626, 630). The OWBPA amended the ADEA, adding a stringent "knowing and voluntary" requirement for contractual waivers of statutory rights and claims. Thiele's 1995 Form U–4 arbitration clause superseded his previous Form U–4 and RE–1 arbitration clauses. The 1999 arbitration clause did not contain a knowing and voluntary waiver of Thiele's right to a jury trial, as required by the OWBPA, and it is therefore unenforceable with respect to his ADEA claim. Thiele has not waived his statutory right to a jury trial.

## C. The Older Workers' Benefit Protection Act

Plaintiff Thiele brings a claim in this Court for age discrimination under the ADEA, under which claimants have the statutory right to a jury trial. 29 U.S.C. § 626(c)(2). ML contends that Thiele's prior contractual agreements to arbitrate displace this statutory right. Both Parties acknowledge the existence of these arbitration agreements.

■ Once a court has determined that an arbitration agreement exists, it must then decide whether Congress precluded waivers of the plaintiff's statutory right to a jury trial. *See Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 760 (9th Cir. 1997) (citing *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir.1996)). Here,

Thiele argues preclusion under the OWBPA. The OWBPA requires contractual waivers of statutory rights and claims under the ADEA to be "knowing and voluntary." In order to be "knowing and voluntary" under the OWBPA, *all* waivers of rights and claims must meet the following requirements:

> An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary.... [A] waiver may not be considered knowing and voluntary unless at a minimum ... the waiver specifically refers to rights or claims arising under this chapter [and] the individual does not waive rights or claims that may arise after the date the waiver is executed.

29 U.S.C. § 626(f)(1)(B)–(C).[1] The "knowing and voluntary" requirement must be met before an employee can waive the "right to seek judicial remedies for statutory claims," including claims under the ADEA. *See Doyle v. Raley's Incorp.*, 158 F.3d 1012, 1015 (9th Cir.1998) (citing 29 U.S.C. § 626(c)). Thiele's Form U–4 waiver did not specifically advise him that he was waiving his rights and claims under the ADEA, nor was that waiver executed after Thiele's ADEA claim arose.

Defendant ML contends that the OWBPA amendments should not apply to Thiele's waiver agreements because (1) Thiele signed three agreements prior to the effective date of the OWBPA, (2) the OWBPA does not protect against waivers of procedural rights, and (3) Congress only intended the OWBPA to apply to termination settlement agreements.

### 1. Effective Date of the OWBPA Amendments to the ADEA

Defendant contends that Thiele cannot be protected by the OWBPA amendments to the ADEA because he signed waivers

---

1. The OWBPA contains other requirements which may not be met by Thiele's waiver. However, the Court does not have sufficient evidence to determine whether those requirements may apply. Furthermore, the Court need not reach those considerations because Thiele's waiver fails to meet the requirements under § 626(f)(1)(B)–(C), which, standing alone, are enough to render the waiver unenforceable.

prior to its effective date. The OWBPA amendments only control waivers executed on or after October 16, 1990. *See* OWBPA § 202(a) (reprinted in note to 29 U.S.C. § 626 entitled "Effective Date of 1990 Amendment"). Thiele signed a series of registration forms containing arbitration-related waivers during his employment. He signed at least three forms before 1990 and at least two forms after 1990. The arbitration clauses in the most recent four forms are identical.

 In California, a subsequent written contract alters the terms of a previous contract. *See* Cal.Code Civ.P. § 1698; *see also Crain v. Burroughs Corp.*, 560 F.Supp. 849, 852 (C.D.Cal.1983); *Crossen v. Foremost–McKesson, Inc.*, 537 F.Supp. 1076, 1077 (N.D.Cal.1982). Such a partial modification "supersedes those terms to which it relates." *Han v. Mobil Oil Corp.*, 73 F.3d 872, 876 (9th Cir.1995). This Court finds that the agreement contained in Thiele's 1995 Form U–4 superseded the previous agreements. This Court must therefore determine whether enforcement of the arbitration clause in this agreement would be contrary to law under the ADEA as amended by the OWBPA. Facially, it appears that it would.

### 2. Procedural v. Substantive Rights

Defendant contends that arbitration in this case would not violate the OWBPA because those amendments concern only waivers of substantive, not procedural, rights. The right to a jury trial is a procedural right, and as such, Defendant argues that Thiele's waiver should not be scrutinized under the OWBPA waiver requirements. Neither the plain meaning of the ADEA, nor the legislative history comports with this view.

 "The statutory command [of the OWBPA] is clear.... The OWBPA implements Congress' policy via a strict, unqualified statutory stricture on waivers and we are bound to take Congress *at its word.*" *Oubre v. Entergy Ops., Inc.*, 522 U.S. 422, 118 S.Ct. 838, 841, 139 L.Ed.2d 849 (1998) (emphasis added). A basic canon of statutory interpretation is that "[i]f the language of a statute is clear and unambiguous there is no occasion to resort to legislative history." *Pipefitters Local Union No. 562 v. United States,* 407 U.S. 385, 446, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972).

The Ninth Circuit has expressly adopted the Supreme Court's approach to statutory interpretation: "The Supreme Court has instructed that '[u]nless exceptional circumstances dictate otherwise, [w]hen we find the terms of a statute unambiguous, judicial inquiry is complete.'" *Foxgord v. Hischemoeller,* 820 F.2d 1030, 1034 (9th Cir.1987) (quoting *Burlington Northern R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987) (citations omitted)); *see also Alaska v. Babbitt,* 38 F.3d 1068, 1077 (9th Cir. 1994).

The ADEA expressly gives claimants a statutory right to a jury trial. *See* 29 U.S.C. § 626(c)(2). In the same ADEA code section, the statute explicitly prohibits the non-conforming waiver of *any* right "under this chapter." 29 U.S.C. § 626(f)(1). The § 626(f)(1) rights "apparently" include the rights to a jury trial. *Duffield,* 144 F.3d at 1189 n. 5. section 626(f)(1) is not ambiguous about the domain of protected rights because it defines that domain as all rights conveyed by the ADEA. As such, the plain language f this statute requires that waivers of *any* statutory ADEA rights must meet the § 626(f)(1) requirements.

Even if the plain meaning of this statute were not clear, the legislative history of the OWBPA supports the plain meaning interpretation. By enacting the OWBPA, Congress sought to ensure "that older workers are not coerced or manipulated into waiving their rights to seek legal relief under the ADEA." S.Rep. No. 101–263. Where Congress expresses an intention to protect a claimant's right to "legal" relief, it intends to protect that claimant's right to a jury trial on demand: "In cases in which legal relief is available and legal rights are determined, the Seventh

Amendment provides a right to [a] jury trial ... [B]y providing specifically for 'legal' relief, Congress knew the significance of the term 'legal,' and intended that there would be a jury trial on demand...." *Lorillard v. Pons,* 434 U.S. 575, 583, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). In the legislative history of the OWBPA, Congress expressed "unequivocal approval" for the *Lorillard* decision. H.R. Rep. No. 101–664 (1990).

■ Furthermore, Congress expressly intended to accord "basic due process protections to employees who are asked to execute waivers" by enacting the OWBPA. S.Rep. No. 101–263. Congress further discussed other procedural rights during its deliberations and expressly referred to the right to a jury trial: "[W]here *procedural protections* are involved, the ADEA should treat older workers differently .... ADEA plaintiffs have the *right to jury trials* .... " H.R.Rep. No. 101–664 (emphasis added). This Court therefore concludes that the right to a jury trial is included in the rights designated in § 626(f)(1).

Additionally, according *to the legislative history of the OWBPA, this Court cannot* consider *any* enforcement of this waiver until ML has proven that the waiver is in compliance with the OWBPA. Under the OWBPA, "[c]ourts *may not* consider whether a 'knowing and voluntary' waiver has been executed until the party asserting the waiver as a defense first proves that each of the requirements set forth in the bill has been satisfied." S.Rep. No. 101–263 (1990). ML has failed to do so. Indeed, ML cannot do so because this waiver was signed before any ADEA claim arose and does not specifically refer to rights or claims under the ADEA. Thus, this Court cannot enforce such a waiver for any purpose.

### 3. OWBPA's Application to Form U–4 Agreements

Defendants further contend that an application of the OWBPA is not appropriate here because it is apparent from the legislative history that Congress only intended to enact the OWBPA for use in interpreting waivers in termination settlement agreements.

■ The plain meaning of the OWBPA is not ambiguous on this point. According to the OWBPA amendments to the ADEA, "an individual may not waive *any* right or claim under this chapter unless [the eight statutory requirements are met]." 29 U.S.C. § 626(f)(1) (emphasis added). "The policy of the OWBPA is likewise clear from the title: It is designed to protect the rights and benefits of older workers." *Oubre,* 118 S.Ct. at 841. Although Congress did express a concern for termination agreements, they did not limit the application of § 626(f) to such agreements. If Congress had intended to limit the OWBPA waiver requirements to termination agreements, the statute would contain such limiting language.

Furthermore, the legislative history supports this Court's application of the OWBPA to the Form U–4. Congress did not intend for the OWBPA to exclusively apply to just one type of agreement. Transcending Congress' concern about termination agreements is its concern about age discrimination and the difficulty that older workers encounter when they are forced to re-enter the workforce after a wrongful termination.

### 4. Related Holdings of Other Federal Courts

Other courts have had the occasion to consider an ADEA claimants' right to a jury trial, but only one court has considered an ADEA claimant whose waiver occurred after the effective date of the OWBPA.

The Supreme Court and the Third Circuit properly declined to extend the protections of the OWBPA to claimants who executed waivers before the OWBPA was effective. The Supreme Court held in 1991, after the enactment of the OWBPA, that an ADEA claimant waived the right

to a jury trial, even under the OWBPA amendments. *See Gilmer,* 500 U.S. at 28, 111 S.Ct. 1647. The Third Circuit considered a similar fact pattern in 1998 and compelled the plaintiff to arbitrate. *See Seus v. John Nuveen & Co., Inc.,* 146 F.3d 175 (3rd Cir.1998). Neither *Gilmer* nor *Seus* is analogous to this case because those plaintiffs executed their Form U–4 agreements prior to 1990. The OWBPA amendments only control waivers executed on or after October 16, 1990. *See* OWBPA § 202(a) (reprinted in note to 29 U.S.C. § 626 entitled "Effective Date of 1990 Amendment"). In the instant case, however, Thiele executed two waivers after the effective date of the OWBPA. Thiele's post–1990 waivers must comport with the requirements of the OWBPA amendments to the ADEA.

The Ninth Circuit has not specifically considered the impact of the OWBPA on Form U–4 agreements. In *Duffield,* during its consideration of Form U–4 agreements in Title VII cases, the court indicated that future ADEA cases may "require different treatment" due to the OWBPA amendments. *Duffield,* 144 F.3d at 1190 n. 5. However, the *Duffield* decision did not concern the ADEA and did not explain what "different treatment" may entail.

The Fifth Circuit, however, has reviewed the impact of the OWBPA on Form U–4 agreements and found the agreement enforceable. *See Williams v. Cigna Fin. Advisors, Inc.,* 56 F.3d 656 (5th Cir.1995). The plaintiff in *Williams,* like Thiele, did sign a new Form U–4 after the effective date of the OWBPA, but the Fifth Circuit ordered arbitration nonetheless. *See id.* at 659. The Fifth Circuit expressed an unwillingness to invalidate all pre-employment arbitration agreements for the purposes of the ADEA and chose to limit the application of the OWBPA to separation agreements only. *see id.* at 660–61. Because this is contrary to the language to the statute, the Court respectfully declines to follow the reasoning of the *Williams* court.

### D. Thiele's FEHA Claim

■ Courts interpreting the FEHA look to interpretations of the ADEA and Title VII. *See Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 916 (9th Cir.1996). As such, the Ninth Circuit in *Duffield* held that "FEHA claims are arbitrable to the same extent as Title VII claims." 144 F.3d 1182, 1187 n. 3. Similarly, this Court finds that Thiele's FEHA claims are arbitrable to the same extent as his ADEA claims. Thiele has not waived his right to a judicial forum for his ADEA claims and subsequently has not waived his right to a judicial forum for his FEHA claims.

### E. Thiele's Public Policy, Contract, and Tort Claims

■ Thiele also alleges termination in violation of public policy, breach of implied employment contract, and tortious interference with prospective advantage, in addition to his ADEA and FEHA claims. These claims do not entail the same kind of stringent requirements for the waiver of rights as do the ADEA and FEHA. There is no bar to enforcing the Form U–4 arbitration clause with respect to Thiele's public policy, contract, and tort claims. *See Duffield,* 144 F.3d at 1200–1203.

### F. Bifurcation of and Order of Proceedings

The law leads this Court to bifurcate the proceedings in this case. Thiele's ADEA and FEHA claims, under the law, shall proceed towards trial.a Thiele's public policy, contract, and tort claims are arbitrable under the agreement and this Court stays the proceedings with respect to these causes of action and compels arbitration of these claims. The court in *Duffield* does not address the issue of order of proceedings in finding that Duffield's Title VII and FEHA claims are not arbitrable, but that her state tort and contract claims were arbitrable. *See Duffield,* 144 F.3d at 1203. Finding that it would present a burden on the Parties to proceed towards trial and simultaneously proceed in arbitration, this

court stays arbitration of Thiele's public policy, contract, and tort claims pending resolution of Thiele's ADEA and FEHA claims, whether via pre-trial proceedings, trial, or settlement.

### G. Change in Rules and Policies

Thiele also argues that a rule change voted by NYSE and a policy change by Merrill Lynch should constitute new evidence for reconsideration. However, even if this Court had *sufficient evidence of these alleged changes, which it does not, these changes do not apply to* this case. Thiele is bound by NYSE rules and Merrill Lynch policies in effect at the time that he commenced this action. But since the Form U–4 did not contain a knowing and voluntary waiver of Thiele's ADEA rights, as required by the OWBPA, these rules and policies cannot supersede Thiele's statutory right to a jury trial for his ADEA and FEHA claims. Changes in rules and policies do not, however, preclude arbitration of his public policy, contract, and tort claims.

### III. Conclusion

The Court hereby GRANTS Thiele's Motion for Reconsideration, VACATES this Court's April 8, 1998 and December 22, 1998 Orders, ENTERS this Order Nunc Pro Tunc to December 22, 1998, and GRANTS IN PART and DENIES IN PART Defendant's Motion to Compel Arbitration and Stay the Proceedings. The Form U–4 clause is unenforceable with respect to Thiele's ADEA and FEHA claims. Therefore, with respect to the ADEA and FEHA claims, the Court hereby DENIES Defendant's Motions to compel Arbitration and Stay the Proceedings. The Form U–4 arbitration clause is enforceable with respect to Thiele's public policy, contract, and tort claims and therefore this Court GRANTS Defendant's Motion to Compel Arbitration for these claims, but stays the proceedings pending the resolution of Thiele's pending federal suit, which is grounded jurisdictionally on the ADEA and FEHA claims. The arbitration claims may then proceed to the extent issues therein to be raised have not been subsumed in the federal suit by reason of the doctrines of res judicata and collateral estoppel.

IT IS SO ORDERED.