# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 28, 2021

Lyle W. Cayce
Clerk

No. 20-20221

International Energy Ventures Management, L.L.C.,

*Plaintiff—Appellee*,

*versus*

United Energy Group, Limited,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-2262

Before Haynes, Higginson, and Oldham, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:

International Energy Ventures Management ("IEVM") sued United Energy Group ("UEG") more than seven years ago. Since then, the dispute has bounced back and forth between three courts and two arbitrations. We now consider whether IEVM's persistent pursuit of litigation prevents it from returning to arbitration once more. The district court said no with almost no analysis. We reverse.

No. 20-20221

## I.

IEVM is a consulting firm that specializes in oil and gas transactions. In 2010, it agreed to help UEG obtain British Petroleum's ("BP") Pakistani assets in exchange for a finder's fee. UEG then submitted a bid to BP for $775 million, which BP accepted. UEG reimbursed IEVM's out-of-pocket expenses for its work on the deal. But according to IEVM, UEG never paid the agreed-upon finder's fee.

In March 2012, the parties entered into a supplemental agreement for additional consulting work on the BP assets. The agreement included UEG's acknowledgment that it still owed IEVM payment for past services. It also contained the following arbitration clause:

> **Governing Law, Arbitration.** This Agreement shall be governed by and interpreted by the laws of the state of Texas. Any controversies arising out of this Agreement or its interpretation shall be settled by a single arbitrator in Houston, Texas in accordance with the rules of the American Arbitration Association, and the judgment upon award may be entered in any court having jurisdiction thereof.

Without mentioning arbitration, IEVM sued UEG in Texas state court in July 2013. It alleged that despite the initial and supplemental agreements, UEG continued not to pay IEVM for services rendered. UEG responded by removing the case to federal court and filing a motion to dismiss for insufficient service of process and lack of personal jurisdiction. IEVM filed a motion to remand to state court in October 2013, and the parties submitted a joint case-management plan shortly thereafter. The plan proposed to stay all discovery until the court ruled on UEG's motion to dismiss. It also included a statement that "in the event the Court denies [the] motion to remand and [the] motion to dismiss, IEVM anticipates filing a

2

motion to compel arbitration." The district court denied IEVM's motion to remand the next month. But UEG's motion to dismiss remained pending.

Three months into the case, IEVM moved to compel arbitration. The district court suspended all briefing on that motion and all other case deadlines pending resolution of UEG's motion to dismiss. So IEVM filed a demand for arbitration with the American Arbitration Association ("AAA") on its own. UEG promptly moved to dismiss the arbitration on the theory that IEVM had waived its right to arbitrate through its litigation conduct in state and federal court.

Arbitrator Gary McGowan agreed. In his view, IEVM had substantially invoked the judicial process to UEG's detriment. McGowan found substantial invocation based on IEVM's "decision to seek substantive relief in court," its opposition to UEG's motion to dismiss, its motion to remand, and its participation in the parties' joint case-management plan. And he found prejudice to UEG based on the "significant" time and attorney's fees UEG spent filing and briefing the motion to dismiss, opposing the motion to remand, and preparing the case-management plan. So McGowan dismissed the arbitration.

IEVM chose not to challenge the McGowan Award. Instead, it waited for the district court to resolve UEG's jurisdictional challenge. When the district court held that Texas lacked personal jurisdiction over UEG, IEVM appealed that ruling along with the prior dismissal of its motion to remand. We initially affirmed the district court's remand denial but reversed its jurisdictional holding. *See Int'l Energy Ventures Mgmt. v. United Energy Grp.*, 800 F.3d 143, 150, 154 (5th Cir. 2015). We revisited that decision after UEG petitioned for rehearing, and we ultimately affirmed the district court on both issues. *See Int'l Energy Ventures Mgmt. v. United Energy Grp.*, 818 F.3d 193, 213 (5th Cir. 2016). Then IEVM filed a petition for rehearing, which we

denied. Nearly three years had passed since IEVM initially filed its lawsuit in state court.

Having failed in arbitration and then in court, IEVM tried yet again. This time it initiated arbitration and litigation simultaneously. The parties drew Platt W. Davis III as their arbitrator. Davis held a preliminary hearing and concluded that "the dispute presented jurisdictional and arbitrability issues that should be addressed prior to . . . a merits determination." He then invited UEG to move to dismiss. UEG did so, raising the same waiver defense on which it prevailed in the McGowan arbitration. IEVM countered that its potential waiver was a matter for a court to decide, not an arbitrator.

The litigation proceeded on a parallel track. IEVM once again sued UEG in Texas state court—this time on the theory that doing so was necessary to compel arbitration. And UEG again removed the action to federal court. At that point, IEVM asked the district court to decide the waiver issue that was pending before Arbitrator Davis and to compel arbitration on everything else. The court held a hearing and decided to stay the case "pending completion of . . . arbitration."

Davis issued a final arbitration award a few months later. He first determined that Arbitrator McGowan's decision did not bind him because McGowan lacked the authority to issue it. Davis pointed to "prevailing case law" holding that issues of litigation-conduct waiver are presumptively for the courts. And he found that IEVM and UEG had done nothing to contract around that presumption. Nevertheless, Davis went on to hold that *he* had authority to resolve the waiver dispute because the district court was aware of the issue and had approved the "completion of . . . arbitration" without any exceptions. Davis then held that IEVM had waived its right to arbitrate for many of the same reasons that persuaded McGowan. He added that IEVM's decision to pursue a two-year appeal instead of challenging the

No. 20-20221

McGowan Award confirmed its waiver: "IEVM was undeniably looking solely to the appellate process, and a potentially favorable ruling on personal jurisdiction, for authority to pursue its claims in court and effectively abandoned and waived its right to arbitrate."

With round two of arbitration completed, IEVM returned to litigation yet again. It asked the district court to vacate the Davis Award and compel arbitration on grounds that Davis had exceeded his authority and UEG hadn't established the elements of waiver. Two years later, the district court issued a five-page "Opinion on Arbitration." It first held that Davis shouldn't have reached the waiver issue because of the presumption that litigation conduct is an issue for the courts. Of course, Davis agreed on that point; he decided waiver despite the presumption because he thought the district court had told him to.

The district court then held that UEG couldn't show sufficient prejudice to justify holding IEVM to its waiver. It offered no citations and the following four sentences in support:

> [IEVM] may have first filed a lawsuit in state court in 2013, but merely filing a lawsuit and conducting a little discovery did not prejudice [UEG]. The bulk of the litigation's activity arose from dismissals and appeals on jurisdictional grounds, never coming close to addressing the core issues. In other words, this case has mostly been a game of cat-and-mouse. Litigation of this sort does not waive arbitration.

Accordingly, the district court vacated the Davis Award and granted IEVM's motion to compel arbitration. It also vacated the McGowan Award—even though IEVM never asked for that.

No. 20-20221

UEG timely appealed that order under 9 U.S.C. § 16(a)(1)(E).[1] Since then, IEVM initiated a third arbitration that remains pending. A panel of our court denied UEG's motion to stay that proceeding.

## II.

Whether IEVM can continue with arbitration is a function of two questions. First, who did the parties agree would decide UEG's waiver defense: an arbitrator or a court? Second, is UEG correct that IEVM waived its right to arbitrate through its litigation conduct? Our ability to answer the second question depends on our answer to the first. So we start there. We review the district court's legal determinations de novo and its factual findings for clear error. *See Forby v. One Techs., L.P.*, 909 F.3d 780, 783 (5th Cir. 2018).

## A.

Arbitrators McGowan and Davis both reached the issue of litigation-conduct waiver and resolved it in UEG's favor. IEVM's attempt to bypass

---

[1] We agree with UEG that § 16(a)(1)(E) permits us to consider its appeal. That provision authorizes appellate jurisdiction over "an order" that "modif[ies], correct[s], or vacat[es]" an arbitration award. The district court's order vacated both the Davis and the McGowan Awards. So § 16(a)(1)(E) unquestionably applies. And because it applies, we have jurisdiction to review the district court's entire "order"—including the waiver discussion related to IEVM's motion to compel. *See BP P.L.C. v. Mayor & City Council of Balt.*, 141 S. Ct. 1532, 1538 (2021) (interpreting 28 U.S.C. § 1447(d) to permit appellate review of "each and every" issue in a district court's remand order despite the fact that "§ 1447(d) extends . . . review only to *some* orders" because "the statute allows courts of appeals to examine the *whole* of a district court's 'order,' not just some of its parts or pieces" (second emphasis added)); *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (adopting a similar interpretation of 28 U.S.C. § 1292(b) because "the text of § 1292(b) indicates [that] appellate jurisdiction applies to the *order* certified to the court of appeals[] and is not tied to the particular question formulated by the district court"); *see also Murchison Cap. Partners v. Nuance Commc'ns, Inc.*, 760 F.3d 418, 420–21 (5th Cir. 2014) ("It is . . . well established that an order vacating an award and remanding the case back to arbitration for a rehearing is a final appealable order.").

those determinations turns on whether the arbitrators "exceeded their powers" in violation of the Federal Arbitration Act ("FAA"). 9 U.S.C. § 10(a)(4). Because "[a]rbitration is a matter of contract," the "power and authority of arbitrators in an arbitration proceeding is dependent on" the parties' agreement. *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002) (quotation omitted); *accord BG Grp. v. Republic of Argentina*, 572 U.S. 25, 33–34 (2014). Here, the parties' agreement is silent on the specific question of who should decide whether IEVM waived its right to arbitrate by pursuing litigation. So we must "determine the parties' intent with the help of presumptions." *BG Grp.*, 572 U.S. at 34.

Most circuits to consider the issue have held that litigation-conduct waiver is presumptively a judicial matter. *See Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016) ("[T]he question before us is presumptively for a court and not an arbitrator to decide. Every circuit that has addressed this issue—whether a district court or an arbitrator should decide if a party waived its right to arbitrate through litigation conducted before the district court—has reached the same conclusion." (citation omitted)). *But see Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462, 466 (8th Cir. 2003) (holding that all waiver challenges should be submitted to an arbitrator). We aligned with that majority in two recent unpublished decisions. *See Sabatelli v. Baylor Scott & White Health*, 832 F. App'x 843, 848 n.3 (5th Cir. 2020) (per curiam); *Vine v. PLS Fin. Servs., Inc.*, 689 F. App'x 800, 802–03 (5th Cir. 2017) (per curiam). And we see no reason to change course here. As we explained in *Vine*, "parties would expect [a] court to decide litigation-conduct waiver" because the issue "implicates courts' authority to control judicial procedures or to resolve issues arising from judicial conduct." 689 F. App'x at 803 (emphases omitted) (quoting *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007)). Thus, a

presumption that courts decide the consequences of litigation conduct best captures the intent of the typical contracting party.

B.

UEG recognizes the general proposition that litigation-conduct waiver is an issue that should be decided by a court. But it contends that the general rule does not apply here for three reasons. None is persuasive.

First, UEG relies on the Supreme Court's observation that parties can contract around presumptions about the proper decisionmaker by "clearly and unmistakably" coming to an alternative arrangement. *BG Grp.*, 572 U.S. at 34 (quotation omitted). UEG asks us to find such an alternative in the parties' agreement that "[a]ny controversies arising out of [their] Agreement or its interpretation shall be settled by a[n] . . . arbitrator . . . in accordance with the rules of the American Arbitration Association." The AAA Rules in turn provide that the arbitrator "shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement[]." INTERNATIONAL DISPUTE RESOLUTION PROCEDURES art. 19(1) (AM. ARB. ASS'N 2014). Characterizing an arbitrator's power to decide litigation-conduct waiver as a question of "jurisdiction," UEG concludes that the parties' contractual incorporation of the AAA rules clearly and unmistakably gave McGowan and Davis authority to resolve the issue.

We disagree. The fact that language in an arbitration agreement is broad enough to cover a particular issue does not mean the language is clear and unmistakable. Thus, we held in *Vine* that an agreement requiring arbitration of "any claim or attempt to set aside this Arbitration Provision" did not rebut the presumption that courts decide litigation-conduct waiver. 689 F. App'x at 803–04. And though we've held that "the express adoption of [AAA] rules" can sometimes provide "clear and unmistakable evidence

that the parties agreed to arbitrate" an issue, *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012), that case is readily distinguishable from this one. The issue in *Petrofac* was who should decide "the initial question of arbitrability, i.e. whether the claim is within the parties' agreement to arbitrate." *Id.* at 674–75. As noted above, AAA rules expressly give arbitrators the power to resolve that question. *See* International Dispute Resolution Procedures art. 19(1) (specifically listing the "scope" of an arbitration agreement as a jurisdictional issue that an arbitrator can decide). But the rules do not expressly give arbitrators the power to resolve questions of waiver through litigation. So incorporation of those rules cannot supply the clear and unmistakable agreement that is required here. *See Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 15 (1st Cir. 2005) ("Neither party should be forced to arbitrate the issue of waiver by conduct without a clearer indication in the agreement that they have agreed to do so.").

Second, UEG contends that the parties agreed to arbitrate litigation-conduct waiver by "submission" if not by contract. *See Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1323 (5th Cir. 1994) ("If the parties go beyond their promise to arbitrate and actually submit an issue to the arbitrator, we look both to the contract and to the scope of the submissions to . . . determine the arbitrator's authority." (emphasis omitted)). UEG supports its submission argument by claiming that IEVM consented to McGowan deciding the waiver issue in the first arbitration.

Again, no. IEVM expressly told Arbitrator Davis that UEG's waiver defense was a "matter . . . for the District Court to resolve." And while IEVM didn't make that point in the McGowan arbitration, nothing in the record evinces a "joint arbitral submission" in which the parties "clearly and unmistakably" agreed to have McGowan decide the issue. *Murchison Cap. Partners v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 624 (5th Cir. 2015); *BG*

*Grp.*, 572 U.S. at 34 (quotation omitted). To the contrary, UEG began its motion to dismiss by asserting that McGowan had an "obligati[on] . . . to abate" the arbitration because of IEVM's pending lawsuit. And the parties' inattention to the "who decides" question prompted McGowan to invite a "federal court [to] revisit the waiver issue *de novo*" if his decision to address it was incorrect.

Third, UEG contends that the presumption of a judicial decisionmaker should not apply to the unique facts of this case. As UEG sees it, issues of litigation-conduct waiver typically arise in court when one party wants to switch to arbitration and the other party objects. This case is meaningfully different, it says, because the waiver issue arose for the first time in an arbitration initiated by IEVM. UEG offers no citations to support its proposed distinction. Nor would we expect to find any. "Arbitration is a matter of contract," plain and simple. *Brook*, 294 F.3d at 672. Extra-contractual factors—like where an issue first arises and who initiates arbitration—are not part of the interpretive analysis.[2]

We therefore conclude that the parties failed to contract around the general rule that courts resolve litigation-conduct waivers. *See Vine*, 689 F. App'x at 802. That means that McGowan and Davis exceeded their authority in resolving the issue, and we must address it.[3]

---

[2] This principle also explains why Arbitrator Davis was wrong to decide an issue on the theory that the district court had left it open. *See supra* Part I. Courts cannot delegate to an arbitrator in violation of a contract any more than Congress can delegate to an agency in violation of the Constitution. *See* U.S. Const. art. I, § 1.

[3] UEG asserts that, even if McGowan exceeded his authority, IEVM's failure to challenge the McGowan Award provides an independent basis for enforcing it. UEG may have a point. The FAA imposes a three-month statute of limitations that "governs the period of time within which a party must file a lawsuit in federal court asking the court to vacate, modify, or correct an arbitration award." *Brown v. Witco Corp.*, 340 F.3d 209, 218 n.8 (5th Cir. 2003) (emphasis omitted) (citing 9 U.S.C. § 12). IEVM never asked the

No. 20-20221

### III.

"[W]aiver of arbitration is a disfavored finding." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009). But we will find it "when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Ibid.* (quotation omitted). Substantial invocation and prejudice are questions of federal law in every case where the FAA applies. *See Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 & n.4 (5th Cir. 1986); *Vine v. PLS Fin. Servs., Inc.*, 807 F. App'x 320, 327 (5th Cir. 2020) (per curiam). So they are federal questions here. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001) (explaining that the FAA's coverage provision extends to all "contract[s] evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction" (quoting 9 U.S.C. § 2)).[4]

---

district court to vacate the McGowan Award, much less did it do so within three months. So it's arguable that even though McGowan exceeded his authority in addressing UEG's waiver defense, his pro-waiver resolution is still binding.

Nevertheless, the issue is complicated by the fact that Arbitrator Davis determined the McGowan Award lacked binding effect. *See New Orleans S.S. Ass'n v. Gen. Longshore Workers*, 626 F.2d 455, 468 (5th Cir. 1980) ("Whether [an arbitration] award can be given [preclusive] effect [is for] . . . neither the district court nor this court [to] decide. If the parties do not agree, that issue itself is a proper subject for arbitration."); *Martel v. Ensco Offshore Co.*, 449 F. App'x 351, 355 n.1 (5th Cir. 2011) (per curiam) (holding that because the FAA only "directs the manner in which a *district court* may vacate, modify, or correct" an arbitration award, its limitations period "has no bearing on modification or clarification sought from an arbitrator"). We need not resolve this complication because we reach the same conclusion as McGowan: litigation-conduct waiver applies. *See infra* Part III. The district court committed reversible error when it held to the contrary. Whether it committed additional error in overturning the unchallenged McGowan Award makes no difference.

[4] Federal standards continue to apply even though the parties agreed to a Texas choice-of-law provision. *See Miller Brewing*, 781 F.2d at 497 n.4 ("dismiss[ing] out of hand" a party's citation to state waiver law in a case where the FAA applied); *In re L&L Kempwood Assocs.*, 9 S.W.3d 125, 127–28 (Tex. 1999) (applying federal law under the FAA because

No. 20-20221

A.

The substantial-invocation analysis in this case is straightforward. Substantial invocation occurs when a party performs an "overt act in [c]ourt that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Nicholas*, 565 F.3d at 907 (quotation omitted). "[I]t is difficult to see how a party could more clearly evince [such] a desire . . . than by filing a lawsuit going to the merits of an otherwise arbitrable dispute." *Id.* at 908 (quotation omitted). So outside of the rare case in which initiating litigation "would not be inconsistent with seeking arbitration," the "act of a plaintiff filing suit without asserting an arbitration clause constitutes substantial invocation of the judicial process." *Ibid.*

Here, IEVM sued UEG in state court without saying anything about arbitration. It demanded a jury trial and paid the required fee. It filed a motion to remand the action to state court and appealed the district court's denial of that motion. It vigorously defended the existence of personal jurisdiction in Texas and appealed the district court's personal jurisdiction dismissal. And it sought rehearing en banc after this court affirmed the district court's removal and jurisdictional holdings. Only *after* we denied its rehearing petition did IEVM initiate the Davis arbitration. IEVM's litigation conduct is therefore a paradigmatic example of what it means to "initially pursu[e] litigation of claims" and then "revers[e] course and attempt[] to arbitrate those claims." *Id.* at 907. As Arbitrator Davis put it, "[o]nly when the path

---

"[t]he choice-of-law provision did not specifically exclude [it]"); *cf. Porter Hayden Co. v. Century Indem. Co.*, 136 F.3d 380, 383 n.5 (4th Cir. 1998) ("[C]hoice-of-law provisions typically embody the parties' choice of one state's laws over another's, rather than express a preference between federal and state law.").

to judicial resolution . . . was foreclosed did IEVM turn its attention back to the possibility of arbitration." That easily constitutes substantial invocation.

### B.

That leaves prejudice. Whether a party has been prejudiced is a "fact-dependent inquiry" that asks if the party suffered "delay, expense, or damage to [its] legal position" because of an opposing party's pursuit of litigation. *Id.* at 910; *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004). UEG does not claim damage to its legal position. So we focus on delay and expense.

### 1.

Start with delay. "[A] party's failure to timely assert its right to arbitrate is . . . relevant to the prejudice determination." *Republic Ins.*, 383 F.3d at 346. While there is no hard-and-fast rule for how long is too long, we have found delays of 10 and 18 months to be sufficiently troubling. *See Nicholas*, 565 F.3d at 910 (10 months); *MC Asset Recovery LLC v. Castex Energy, Inc. (In re Mirant Corp.)*, 613 F.3d 584, 591 (5th Cir. 2010) (18 months). Delay coupled with extensive pretrial litigation is even more problematic because of the "inherent unfairness" that occurs when a party "forces it[s] [opponent] to litigate" a dispute "and later seeks to arbitrate" it. *Republic Ins.*, 383 F.3d at 346 (quotation omitted); *see also In re Mirant Corp.*, 613 F.3d at 590 (rejecting a litigant's attempt to obtain "a second bite at the apple through arbitration" (quotation omitted)).

These principles clearly establish that IEVM's repeated delays in seeking arbitration were significant. IEVM filed its state-court lawsuit in July 2013. It said nothing about arbitration until three months later—and only when it became apparent that IEVM might not get to proceed in state court like it wanted. The McGowan arbitration began in January 2014 and concluded in June when McGowan determined that IEVM had waived its

No. 20-20221

right to arbitrate. Rather than challenge that ruling, IEVM jumped right back to the pending litigation. The district court's dismissal, IEVM's appeal, our affirmance, and IEVM's rehearing petition took the parties all the way to September 2016. That November—after stretching out the first round of litigation as long as it possibly could—IEVM filed a second lawsuit in state court and simultaneously initiated the Davis arbitration. More than three years had passed since IEVM first filed suit, and nearly two-and-a-half years had passed since the first arbitration concluded. That far surpasses the 10- and 18-month delays that concerned us in prior cases. In short, "[IEVM] was aware of its right to compel arbitration [from] the beginning . . . but chose instead to resolve as much of the case as possible [in] . . . court." *In re Mirant Corp.*, 613 F.3d at 592.

Next consider expense. As with delay, there is no magic number as to how much expense is enough to show prejudice. Indeed, a party claiming prejudice need not submit a number at all. *See Nicholas*, 565 F.3d at 910–11 (affirming the district court's waiver holding even though the party seeking waiver "did not put on evidence in terms of dollars and cents of its litigation costs"). Rather, the party need only show that it was "forc[ed] . . . to expend substantial amounts of time and money defending itself" in court. *Miller Brewing*, 781 F.2d at 496; *see also Nicholas*, 565 F.3d at 910 (finding prejudice where the arbitration opponent's "litigation activities were significant in the context of th[e] dispute").

UEG has made the requisite showing. Among other things, IEVM's persistent pursuit of litigation required UEG to defend its interests by:

- removing the case to federal court,
- opposing IEVM's motion to remand,
- filing a motion to dismiss for lack of personal jurisdiction,
- preparing a joint discovery and case-management plan,

14

- filing an appellate brief defending the district court's dismissal,
- traveling to New Orleans to participate in oral argument,
- filing a petition for rehearing after we initially reversed the district court, and
- responding to IEVM's rehearing petition after we ultimately affirmed the district court.

Little wonder that Arbitrators McGowan and Davis determined UEG incurred "significant attorney['s] fees" and submitted "substantial briefing" to protect its interests. UEG easily suffered prejudice.

2.

The district court concluded otherwise—a holding we'd typically review for clear error. *See, e.g.*, *Nicholas*, 565 F.3d at 911; *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159–60 (5th Cir. 1986). But clear-error review assumes there are "factual findings underlying" a district court's determination. *Forby*, 909 F.3d at 783. And here the district court's analysis contains no factfinding. Rather than carefully review the record for prejudice like McGowan and Davis did, the district court dismissed IEVM's prejudicial litigation as a harmless jurisdictional "game of cat-and-mouse." We owe no deference to such conclusory assertions. *Cf. Univ. of Tex. M.D. Anderson Cancer Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 985 F.3d 472, 475–76 (5th Cir. 2021) (reviewing an agency determination de novo when the agency refused to address a regulated party's legal objections).

IEVM advances three principal arguments to defend the district court's no-prejudice holding. First, IEVM contends that it did not damage UEG's legal position because it never litigated the merits of its claims in any court or tribunal, and the litigation never proceeded beyond threshold jurisdictional issues. That's irrelevant because damage to UEG's legal position is only one way IEVM could prejudice its opponent. *See Republic Ins.*,

383 F.3d at 346 ("Prejudice refers to . . . inherent unfairness in terms of delay, expense, *or* damage to a party's legal position . . . ." (emphasis added) (quotation omitted)). And there can be little doubt that IEVM's litigation conduct resulted in significant delay and expense to UEG. *See supra* Part III.B.1. That the delay and expense stemmed from a jurisdictional dispute instead of a "merits" one is beside the point.[5]

Second, IEVM argues that its three-plus years of litigation did not prejudice UEG because all discovery was stayed. Once again, IEVM mistakes a prejudice indicator for a prejudice requirement. Discovery is a prejudice indicator because it can lead to delays, it can generate expenses, and it can damage a party's legal position by revealing information that would not be discoverable in arbitration. *See Frye v. Paine, Webber, Jackson & Curtis, Inc.*, 877 F.2d 396, 399 (5th Cir. 1989). But that does not mean discovery is always necessary to find prejudice. *Cf. Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991) (holding that a court "should not ordinarily infer waiver based upon prejudice" when "only a minimal amount of discovery has been conducted" (quotation omitted)). A three-year dispute over personal and subject-matter jurisdiction spanning three courts, two arbitrators, and hundreds of pages of briefing generates prejudice—regardless of the amount of discovery.

---

[5] We're also unpersuaded by IEVM's contention that it needed to litigate personal jurisdiction over UEG to secure its right to arbitrate. IEVM knew about the parties' Texas arbitration clause from the beginning. And that arbitration clause standing alone justified arbitration in Texas, even if personal jurisdiction over UEG was otherwise absent. *See Int'l Energy Ventures Mgmt.*, 818 F.3d at 212 (applying the longstanding rule that an agreement to arbitrate a case in a state permits district courts in that state to "exercise personal jurisdiction over the parties for the limited purpose of compelling arbitration," even if personal jurisdiction is otherwise lacking (quotation omitted)).

No. 20-20221

Finally, IEVM protests that the three-year delay was not its fault. It reasons that "much of that time was simply spent waiting on [the district court] to rule and then for the first appeal to be briefed and then decided." Red Br. 36. And it insists that "[UEG] caused the problem" by "cho[osing] to remove the case to federal court" and then "mov[ing] to dismiss based on personal jurisdiction." *Ibid.* Those arguments fail too. With respect to our court and the district court's decision time, IEVM had the option to challenge Arbitrator McGowan's waiver determination within three months if it wanted to remain in arbitration. *See* 9 U.S.C. § 12; *supra* note 3. It never did so. As for IEVM's allegation that UEG caused the problem by noticing its removal and moving to dismiss, we have already rejected that argument. *See Miller Brewing*, 781 F.2d at 497 (finding prejudice where the arbitration proponent "busily pursu[ed] its legal remedies" for three-and-a-half years, then noting that its opponent "[o]f course . . . had to participate and defend its interests in all these actions"). IEVM filed suit and thereby forced UEG to respond or lose its rights. UEG's decision to defend itself in litigation does not discount the prejudice it suffered.

\*　　\*　　\*

We hold that IEVM substantially invoked the judicial process to UEG's detriment. We therefore REVERSE and REMAND with instructions to deny IEVM's motion to compel arbitration and to enter judgment for UEG.

17