# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 24, 2025

Lyle W. Cayce
Clerk

No. 24-10699

Dayana Garcia,

*Plaintiff—Appellee*,

*versus*

Fuentes Restaurant Management Services Incorporated, *doing business as* Gloria's Restaurant; Gloria's Restaurant Las Colinas L.L.C., *doing business as* Gloria's Restaurant; Nancy Fuentes Fairview Incorporated, *doing business as* Gloria's Restaurant; Jose Fuentes,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:23-CV-1585

Before Richman, Willett, and Douglas, *Circuit Judges*.
Dana M. Douglas, *Circuit Judge*:

Dayana Garcia worked as a server at Gloria's, a Latin-themed restaurant chain, for several months. After her employment ended, she filed this Fair Labor Standards Act ("FLSA") suit, asserting that the defendants failed to pay minimum wage as required under federal law. The parties participated in the beginning steps of litigation: the defendants answered the

lawsuit; participated in initial discovery; engaged in mediation; and filed a joint status report with Garcia in which they stated that they had "no intent to arbitrate" the suit. Five months after Garcia filed the lawsuit, however, the defendants moved to compel arbitration. The district court denied the motion, finding that the defendants waived the right to arbitrate. The defendants appealed. Because the defendants substantially invoked the litigative process, we AFFIRM the district court's denial of the motion.

I

Dayana Garcia worked as a server for approximately seven months at the Las Colinas and Colleyville locations of Gloria's, a popular Texas chain restaurant. In July 2023, she filed this putative collective action against three entities involved in the ownership and operation of Gloria's, as well as one of the restaurant's original co-founders, Jose Fuentes (collectively, the "Restaurant Defendants").

Soon after the suit was filed, the Restaurant Defendants answered the complaint. The answer listed thirty-one affirmative defenses, but did not mention arbitration. The parties then participated in a Rule 26(f) conference and filed a joint status report "pursuant to judge-specific requirements." The court's joint status report asked "[w]hether the parties are considering mediation or arbitration to resolve this litigation and a statement of when alternative dispute resolution would be most effective." The parties responded that they were "not considering arbitration to resolve this litigation and Defendants are not aware of any arbitration agreements." Instead, they had agreed to mediate the matter in November 2023 and were open to exploring both informal and formal settlement discussions.

Meanwhile, the parties engaged in formal discovery, exchanging requests for production and interrogatories. As part of this discovery, the Restaurant Defendants produced an unsigned arbitration agreement and a

signed acknowledgement form.  The acknowledgement form stated that Garcia "received and read (or had the opportunity to read) the Summary Plan Description" ("SDP") and that "certain claims or disputes relating to an on-the-job injury . . . must be submitted to an arbitrator."  These documents received no immediate attention.[1]

The parties mediated on December 6, 2023, at which time the Restaurant Defendants first mentioned their desire to compel arbitration.[2] Shortly following the mediation, which was unsuccessful, the Restaurant Defendants moved to compel Garcia to arbitration pursuant to the unsigned arbitration agreement.  The motion incorporated two declarations in which Gloria's management employees stated that they provided the paperwork— including the agreement to arbitrate and the acknowledgement form—to new hires.  The motion also incorporated a copy of Garcia's signed acknowledgement form.

The district court judge referred the motion to the magistrate judge. The magistrate judge recommended that the motion be denied, reasoning that the Restaurant Defendants engaged in several overt acts demonstrating a desire to resolve the arbitrable dispute through litigation, including "filing an answer and defending this litigation for almost five months, participating

---

[1] At some point prior to Garcia's hiring, the Restaurant Defendants discontinued the Occupational Injury Employee Benefit Plan to which the SDP applied.  But some Gloria's locations continued to provide the associated SDP acknowledgement form alongside an arbitration agreement.  While it is unclear why some branches of Gloria's continued to distribute an outdated SDP acknowledgement form, the record suggests that Garcia signed only the acknowledgement form and not the arbitration agreement.

[2] The Restaurant Defendants contend that Garcia's statement to this effect was "a misrepresentation of the facts" on the basis that they "produced Garcia's signed Acknowledgement and the Arbitration Agreement to Garcia in discovery" and Garcia's counsel confirmed receipt.  They do not, however, meaningfully dispute that the parties did not discuss arbitration until December 6.

in discovery, attending mediation, and expressly representing to the Court in the parties' Joint Report that [they] did not intend to pursue arbitration of Garcia's claims." Because the magistrate judge's report and recommendation found that the Restaurant Defendants waived their right to arbitrate, it did not consider whether a valid arbitration agreement existed.

The Restaurant Defendants objected to the report and recommendation, arguing, among other things, that while *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022), "eliminated . . . the presumption against a finding of waiver," all contracts benefit from a presumption against waiver. The district court considered the Restaurant Defendants' objections and overruled them, accepting the magistrate judge's findings and recommendations as its own. The Restaurant Defendants timely appealed.

II

Before we consider whether the Restaurant Defendants waived their right to arbitrate, we must address the sea change in the law governing arbitration waiver following *Morgan v. Sundance*. 596 U.S. 411. This court has long embraced an arbitration waiver test rooted in prejudice: Waiver of an arbitration agreement occurs where "[(1)] the party seeking arbitration substantially invokes the judicial process [(2)] to the detriment or prejudice of the other party." *Miller Brewing Co. v. Fort Worth Dist. Co., Inc.*, 781 F.2d 494, 497 (5th Cir. 1986); *see also E.C. Ernst, Inc. v. Manhattan Const. Co. of Tex.*, 559 F.2d 268, 269 (5th Cir. 1977). The prejudice prong of this analysis "derives from the FAA's 'policy favoring arbitration.'" *Morgan*, 596 U.S. at 414. But *Morgan* upended that portion of the analysis.

In *Morgan*, the Supreme Court considered the Eighth Circuit's arbitration-specific rule, which was grounded in the FAA policy favoring arbitration. *Id.* at 417. The Eighth Circuit, like most others, had adopted a prejudice requirement premised on that same policy. *Id.* at 418. But *Morgan*

nullified that approach: the arbitration-favoring policy "does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Id.* Rather, that policy merely "place[s] such agreements upon the same footing as other contracts." *Id.* (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010)). Therefore, the relevant question is whether "an ordinary procedural rule . . . would counsel against enforcement of an arbitration contract." *Id.* at 418. As the Supreme Court defined it, waiver is "the intentional relinquishment or abandonment of a known right." *Id.* at 417 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

We have not revisited our test for waiver of an arbitration agreement since *Morgan*.[3] We do so here. If we excise the prejudice prong from our pre-*Morgan* test, there is only one way to show waiver in the arbitration context: demonstrating that a party "substantially invoke[d] the judicial process." *Miller*, 781 F.2d at 497. To be sure, this does not facially conflict with *Morgan*'s holding that there be no special procedural rules governing arbitration agreements. But such a conclusion would still, at least partially, fly in the face of *Morgan*'s holding. Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan*, 596 U.S. at 417 (quoting *Olano*, 507 U.S. at 733). If waiver of an arbitration agreement *only* occurred when a party substantially invoked the judicial process, we would be "devis[ing] novel rules to favor arbitration over litigation" by limiting the number of ways to prove waiver—precisely what *Morgan* counsels against. *Id.* at 418.

---

[3] We have only encountered one arbitration waiver matter in the wake of *Morgan*, in *Pumphrey v. Triad Life Sciences, Inc.*, No. 24-60028, 2024 WL 4100495, at *2 (5th Cir. Sept. 6, 2024). In that unpublished opinion, a panel of this court stated that a party "*can* waive its contractual right to arbitration by 'substantially invok[ing] the judicial process.'" *Id.* (alteration in original) (emphasis added) (quoting *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991)). But we chose not to otherwise define waiver in light of *Morgan*, nor did we discuss *Morgan* at all.

No. 24-10699

Instead, we accept the Supreme Court's sanctioned definition—which it used to endorse the Eighth Circuit's remaining test—to determine whether the right to arbitrate was waived. That is, we now ask whether the party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Id.* at 419. This does not overhaul our circuit's jurisprudence with respect to waiver of the right to arbitrate. Instead, substantial invocation of the judicial process is merely one way of demonstrating that a party waived its right; after all, substantial invocation of the judicial process is an intentional abandonment of a known right.[4]

## III

## A

Garcia, relying on the district court's order, argues that the Restaurant Defendants engaged in several overt acts that evinced a desire to resolve the dispute through litigation.[5] Specifically, the district court highlighted the following: (1) "filing an answer," (2) "defending this litigation for almost five months," (3) "participating in discovery," (4) "attending mediation," and (5) "expressly representing to the Court in the parties' Joint Report that [the Restaurant Defendants] did not intend to pursue arbitration of Garcia's claims."

---

[4] This requires a party to, "at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999)).

[5] Garcia's briefing conflates express and implied waiver, often weaving between the two. She notes that the express, unequivocal statement that the parties did not intend to arbitrate waived the right, but then pairs that statement with tenets of implied waiver. We do not consider whether the Restaurant Defendants expressly waived their right to arbitration.

6

We remain mindful that we no longer consider prejudice and that there is no presumption against waiver.[6]  Therefore, while some facts were traditionally more reflective of prejudice—such as participation in discovery, *see Int'l Energy Ventures Mgmt., L.L.C. v. U.S. Energy Grp., Ltd.*, 999 F.3d 257, 269 (5th Cir. 2021) (referring to discovery as "a prejudice indicator")— they may still contribute to a finding that a party invoked the judicial process. Moreover, whether a party waived its right to arbitrate is necessarily fact-intensive; thus, a fact that weighs in favor of waiver in one case may not carry any weight in another.  *Compare, e.g.*, *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1162 (5th Cir. 1986) (noting that a party's motion for summary judgment, among various other acts, contributed to waiver), *with Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897–98 (5th Cir. 2005) (noting that a plaintiff "offer[ed] no legal authority for why a motion for summary judgment, filed from a defensive posture, can be characterized as an invocation of the judicial process").  We apply this fact-intensive inquiry below, noting that "a bright-line rule is inappropriate for deciding whether a party has waived its right to arbitration."  *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010).

We "review the district court's determination of a motion to compel arbitration de novo."  *Forby v. One Techs., L.P.*, 909 F.3d 780, 783 (5th Cir. 2018).  When a district court denies a motion to compel due to waiver, "[w]e review the issue of whether a party's conduct amounts to a waiver of

---

[6] Garcia bears the burden of proving waiver by a preponderance of the evidence. The Restaurant Defendants, confusingly, refer to the burden of proof as creating "a presumption against a finding of waiver."  Their attempt at labeling this "an 'inherently high standard,'" citing *LaLonde v. Gosnell*, 593 S.W.3d 212, 218 n.9 (Tex. 2019), is misguided.  In making that statement, the Texas Supreme Court merely highlighted the difficulty in showing another party's intent.  The burden of proving intent, however, is no higher than the typical preponderance of the evidence standard.

arbitration de novo." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999). Any factual findings underlying the district court's determination are reviewed for clear error. *Id.*

B

Because we consider the totality of the circumstances in determining whether a party has waived its right to arbitrate, we evaluate the Restaurant Defendants' litigative acts alongside their statement that they were not considering arbitration and their failure to preserve the defense in their answer.

Early in the case, the district court ordered the parties to confer and submit a "mandatory" joint report covering various types of information, including "[w]hether the parties [were] considering mediation or arbitration to resolve this litigation." In their joint report, the parties stated that they did not intend to submit the matter to arbitration. Traditionally, this court has considered "routine scheduling orders and discovery continuances" as district court actions that may not move the needle on waiver. *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991). After all, filing this joint report may be among those acts that "the court might well have directed [the Restaurant Defendants] to do in the interest of management of the case." *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 929 (5th Cir. 1970).

The Restaurant Defendants cite *Pacheco v. PCM Construction Services, L.L.C.*, 602 F. App'x 945 (5th Cir. 2015), an unpublished opinion in which we found that the arbitration provision was not waived, to support their position that the joint report should not weigh against them. There, the defendants in a putative FLSA collective action filed a joint report with the plaintiffs in accordance with the district court's form. We noted that the defendant's actions "were relatively limited" and held that they did not

8

waive their right to arbitrate. *Id.* at 948–49. But as the Restaurant Defendants admit, the parties in *Pacheco* never mentioned arbitration in their joint report. And we took no notice of the form report's failure to mention arbitration.

The facts here are distinguishable. The parties stated that they were "not considering arbitration to resolve this litigation," and the Restaurant Defendants specifically noted that they were "not aware of any arbitration agreements." This statement is an "overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009) (quoting *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002)). Then, *after* stating that they were not considering arbitration, the Restaurant Defendants took several steps confirming that intended course of action. They participated in discovery. They mediated, as suggested by the court. They remained in court for three months. And before this all, they filed an answer that failed to preserve an arbitration defense.

It is generally true that participation in discovery does not weigh heavily in favor of waiver. We have previously stated that "[p]arties cannot enjoy the benefits of federal discovery, and then, after doing so, seek to enforce a decision through private resolution" due to the potential for prejudice. *Janvey v. Alguire*, 847 F.3d 231, 244 (5th Cir. 2017). After all, alternative dispute resolution is often justified through its "avoidance of large litigation costs, including discovery." *Id.* Here, the parties exchanged one set each of interrogatories, requests for production, and responses, similar to "the minimal discovery" that we have previously considered insufficient to waive arbitration. *Walker*, 938 F.2d at 578; *see id.* at 576 (noting that the defendant had "served plaintiffs with several preliminary interrogatories and requested that plaintiffs produce certain documents"); *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420–21 (5th Cir. 1985) (listing that the

defendant "filed interrogatories and a request for production of documents, moved for a protective order, and agreed to a joint motion for continuance requesting an extension of the discovery period," but ultimately noting that "when only a minimal amount of discovery has been conducted, . . . the court should not ordinarily infer waiver"). But discovery took place after the Restaurant Defendants informed the court of their intent not to arbitrate. Participation in litigative activity pursuant to a scheduling order *after* disclaiming arbitration certainly constitutes an overt act evincing a desire to litigate.

The same can be said of mediation. This court has previously made varying statements favoring settlement negotiations in this context. *See, e.g.*, *Walker*, 938 F.2d at 578 ("Attempts at settlement . . . are not inconsistent with an inclination to arbitrate and do not preclude the exercise of a right to arbitration." (citation omitted)); *Sw. Indus. Imp. & Exp., Inc. v. Wilmod Co., Inc.*, 524 F.2d 468, 470 (5th Cir. 1975) ("Participation in settlement negotiations . . . [has] been held not to preclude the right to arbitrate . . . ."). But mediation may be more nuanced.

While mediation may not typically indicate a willingness to litigate, some facts may suggest that alternative dispute resolution is judicially motivated. Here, the parties did not elect to mediate out of their own desire to resolve the dispute. They did so *because* the judge was a proponent of early mediation: the Restaurant Defendants specifically noted that their interest stemmed at least in part from "the Court's conference order." Indeed, they suggested "an early mediation knowing that Judge Kinkeade is also a fan of early resolution." It is true that the parties, in doing so, complied with an order reflecting the court's interest in managing the case. *See Gen. Guar. Ins. Co.*, 427 F.2d at 929. But the record also shows that these statements supported mediation in lieu of arbitration.

No. 24-10699

The Restaurant Defendants first recommended mediation on August 11, 2023, after receiving the district court's request, on August 10, 2023, that the parties submit a joint report discussing whether the parties were considering mediation *or arbitration*. While the mere act of mediating may not, by itself, suggest an inclination to litigate over arbitrate, when the act is taken (1) in accordance with a judge's wishes and (2) instead of possible arbitration, we do not view the act as merely neutral. Such is especially so where, as here, the act is accompanied by an unambiguous statement that the parties are not seeking arbitration.

We find further support in the Restaurant Defendants' answer. Answering a complaint does not typically suggest that a party has substantially invoked the judicial process. After all, answers are the most basic form of responsive litigation, with failure to answer resulting in a default judgment. *See Gen. Guar. Ins. Co.*, 427 F.2d at 929. To find that the filing of an answer always contributes to substantially invoking the judicial process would be to turn a blind eye to the realities of litigation.

But that is not to say that filing an answer can *never* contribute to such a finding. In *Morgan*, the Supreme Court noted that while the defendant answered the complaint and asserted fourteen affirmative defenses, none of them mentioned the arbitration agreement. *Morgan*, 596 U.S. at 414. Taking notice of this fact makes sense. The Restaurant Defendants' failure to mention an arbitration agreement—and failure to preserve that defense among the thirty-one that they asserted—only corroborates their later statement that they had no intent to arbitrate.[7]

_____

[7] Our previous statements that answering the complaint does not contribute to waiver predated *Morgan* and were in distinguishable procedural postures from the present case. *See, e.g.*, *Williams*, 56 F.3d at 661–62 (stating that the answer came *after* a motion for stay pending arbitration); *Walker*, 938 F.2d at 576–77 (noting that a party answered,

11

No. 24-10699

The delay in moving to compel arbitration receives similar treatment. Garcia filed her complaint on July 14, 2023, and the Restaurant Defendants moved to compel arbitration on December 12, 2023. "[A] defendant may allow significant time to pass and may engage in some preliminaries of litigation without the court's finding substantial invocation." *Aptim Corp. v. McCall*, 888 F.3d 129, 141 (5th Cir. 2018). We evaluate the issue of delay "objectively, independent of motivation,"[8] considering it in light of all of the facts. *Walker*, 938 F.2d at 578. While there is no bright-line rule, we have previously found a thirteen-month delay to be permissible where the defendant "was not entirely responsible for the delay." *Id.*; *see also Tenneco Resins*, 770 F.2d at 420–21 (permitting an eight-month delay).

It is true that the Restaurant Defendants moved to compel arbitration less than three weeks after discovering the agreement and five months after the start of litigation. They did not wait until the eve of trial, *see Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004), nor did they "seek[] a decision on the merits before attempting to arbitrate," *Petrol. Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009),

---

without additional analysis); *Tenneco Resins*, 770 F.2d at 417 (highlighting that the answer "alleged as a defense that the action should be dismissed because the dispute was covered by a valid and enforceable arbitration clause in the contract between the parties").

[8] We pause to note that pre-*Morgan* jurisprudence on this issue made such remarks with an eye to prejudice. *See Int'l Energy*, 999 F.3d at 267 ("Delay coupled with extensive pretrial litigation is even more problematic because of the 'inherent unfairness' that occurs when a party 'forces it[s] [opponent] to litigate' a dispute 'and later seeks to arbitrate' it." (alterations in original) (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004))). While we no longer search for prejudice due to delay, we still find value in an objective consideration of the duration of the proceedings when determining whether there has been a substantial invocation of the judicial process. Despite the exclusion of the prejudice prong, we have an interest in preventing parties from receiving "a second bite at the apple through arbitration." *Petrol. Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 482 (5th Cir. 2009).

"move[] for . . . summary judgment," *Price*, 791 F.2d at 1162, or wait until the district court "gave very strong indications that [it] favored" the opposing party's position, *Petrol. Pipe*, 575 F.3d at 481.

But context controls, and the Restaurant Defendants litigated for three months after declaring their intent *not* to arbitrate. We frown upon attempts "to switch judicial horses in midstream" due to "poor judgment . . . or poor foresight." *Walker*, 938 F.2d at 577. As we discuss below, the Restaurant Defendants' failure to discover the possibility of arbitration in their own files is poor foresight. This delay, within the context of the above acts, suggests an intent to remain in court.[9]

The Restaurant Defendants did not assert an arbitration defense in their answer, expressly stated they would not seek arbitration, and subsequently engaged in typical litigative processes. These acts were intentionally taken, and, together, constitute abandonment of the right to arbitrate.

## C

The Restaurant Defendants protest that they knew not of their arbitration rights when they submitted the joint report and engaged in the subsequent litigation conduct. So, they argue, they cannot possibly have

---

[9] Because we no longer consider prejudice, delay by itself will rarely move the needle in this analysis. Instead, it is the activity *accompanying* the delay that will usually invoke the judicial process to sufficiently waive a right to arbitrate. Even in cases in which a party waits until the eve of trial—one of the clearest examples in which delay would weigh in favor of waiver—waiver may be premised more on the parties' significant discovery, motions practice, and trial preparation. Such is the case here. It is not the time *itself* that contributes to our holding, but that the parties engaged in traditional litigative practice in federal court for three months after clearly stating that they did not intend to arbitrate.

waived their right, because it was not "known" to them. *See Morgan*, 596 U.S. at 417. We are not convinced.

As an initial matter, the Restaurant Defendants cite *Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656 (5th Cir. 1995), in which we held that a party did not substantially invoke the judicial process where it moved for arbitration "as soon as it discovered that the dispute was subject to arbitration." *Id.* at 661. But *Williams* is distinguishable. There, Williams sued his former employer, Cigna, for discriminatory termination. *Id.* at 658. As part of his employment, Cigna had required him to register as a member with the National Association of Securities Dealers ("NASD"). *Id.* However, his registration "provided for mandatory arbitration of 'any dispute, claim or controversy that may arise between me and my firm.'" *Id.* While working for Cigna, the rules were amended to require arbitration of claims of employment termination. *Id.* It was not until discovery that Cigna learned of Williams's signed agreement mandating arbitration. *Id.*

We rejected Williams's argument that "Cigna should have known prior to removing the action that the dispute was arbitrable" because "his contract with Cigna required that he register with NASD." *Id.* at 661 n.3. Instead, we credited Cigna with filing a motion to stay shortly after *actually* discovering the arbitrable nature of the suit. *Id.*

The facts here are distinguishable. While the arbitration clause there existed in Williams's registration with the NASD—an agreement to which Cigna was indisputably *not* a party, even if it required the registration—the Restaurant Defendants gave Garcia the arbitration agreement, and Garcia's signed acknowledgment form was in the Restaurant Defendants' files. That the Restaurant Defendants were unaware of their own file does not assist

them—they are in a crisis of their own creation.[10]  This is hardly a new tenet of waiver jurisprudence.  *See Nicholas*, 565 F.3d at 910 ("[T]he deposition shows that she had the Agreement all along in her husband's files . . . .")[11];

---

[10] The district court's order read: "Whether the parties are considering mediation or arbitration to resolve this litigation and a statement of when alternative dispute resolution would be most effective (*e.g.*, before discovery, after limited discovery, after motions are filed, etc.)."  This language does not suggest that the Restaurant Defendants had to take an all-or-nothing stance regarding their plans to arbitrate.

To be clear, our position does not create the doomsday scenario that the Restaurant Defendants consider "tantamount to imposing an inescapable and pre-determined punishment in the form of an automatic waiver finding even where a party diligently engages in discovery and locates an arbitration agreement in the early stages of litigation." Our conclusion stems largely from the fact that the acts were taken following a statement that the parties did not intend to arbitrate.  And, regardless, our holding is one based on the operative facts.  After all, "a bright-line rule is inappropriate for deciding whether a party has waived its right to arbitration." *In re Mirant Corp.*, 613 F.3d at 589.

To that end, the Restaurant Defendants' citation to our unpublished opinion in *Tristar Financial Insurance Agency v. Equicredit Corp. of America*, 97 F. App'x 462 (5th Cir. 2004) (per curiam), is similarly unavailing.  There, a panel of this court held a business that "promptly moved to compel arbitration once it became aware of the arbitration clause" did not waive arbitration. *Id.* at 465.  But the business "was in the process of winding down . . . and vastly downsizing its staff during the litigation[,] and did not have the ready access to important documents that would be expected of a typical ongoing corporate enterprise." *Id.*  Critically, the company there had also referenced the possibility of arbitration in its complaint.  We noted in *Tristar* that "[w]e do not condone a party's failure to apprise itself of its own key documents in litigation." *Id.* at 466.  But that is exactly what the Restaurant Defendants did. *Tristar* does not support their position.

To the extent the Restaurant Defendants challenge the district court's admonishments to them "for failing to put on proof," they misrepresent the context.  While the magistrate judge noted that the Restaurant Defendants did "not set forth any facts that would support their assertion" that they were "'in ignorance' of their alleged right to arbitrate," the magistrate judge was referring to the fact that the Restaurant Defendants failed to persuasively argue that *Tristar* was relevant.  The magistrate judge otherwise placed the burden of establishing waiver on Garcia: after concluding that the acts constituted waiver, the judge concluded that the Restaurant Defendants misplaced their reliance on *Tristar* "because the facts are distinguishable."

[11] While the plaintiff in *Nicholas* "may have seen a copy of" the arbitration agreement before she found the original, and "admit[ted] discussing the issue of arbitration

*see also Huntington Bank v. Merrill Lynch*, No. 95-60314, 1996 WL 46808, at *4 (5th Cir. Jan. 15, 1996) ("The district court clearly found that Huntington was at least on constructive notice as to the existence of the arbitration agreements.").

The Restaurant Defendants had sufficient knowledge to waive their right to arbitrate. Therefore, their argument fails.

\*　　　\*　　　\*

Considering the totality of the circumstances, we conclude that the Restaurant Defendants "intentional[ly] relinquish[ed] or abandon[ed] . . . a known right" by substantially invoking the judicial process. *Morgan*, 596 U.S. at 417.

## IV

Our previous waiver test, excised of the prejudice prong, remains one way a party can intentionally relinquish or abandon their right to arbitrate. Because the Restaurant Defendants substantially invoked the litigative process, we find that they waived their right to arbitrate. Accordingly, the order of the district court is AFFIRMED.

---

with [an employee of the defendant] before she filed suit," those facts do not distinguish the case. *Nicholas*, 565 F.3d at 910. Here, the Restaurant Defendants had the agreement in their files and had continued handing out arbitration agreements and acknowledgements at some branches long after the restaurant eliminated that requirement.